## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD MAZUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 3017 |
| | ) | |
| MICHAEL SZPORER, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the motion to dismiss the complaint is granted.

### BACKGROUND

Invoking diversity jurisdiction, plaintiff Edward Mazur filed this suit against defendant Michael Szporer in April 2002, alleging defamation and false-light invasion of privacy. Plaintiff's allegations are summarized as follows. Plaintiff is an American citizen, originally from Poland, who immigrated to the United States in 1962. He is a businessman (with ownership interests in a number of businesses) who lives in Glenview, Illinois, with his wife and two of his three sons. He is, or has been, involved in various social and community-based activities.

Plaintiff alleges that Szporer is editor of the "Siec," "a newsletter that is published and disseminated at least nationwide over the internet." (Complaint, ¶ 3.) According to plaintiff, "[o]n March 2, 2002, and April 3, 2002, Defendant published articles in the Siec that state that Mazur contracted for the murder of a Polish Police officer, Marek Papala. The articles also indicate that Mazur was involved with organized crime in Poland, and that he exercised improper influence over Polish government officials in Warsaw, including the Prime Minister and the Justice Minister of Poland." (Id., ¶ 11.) The complaint does not quote from the allegedly defamatory articles, nor are they attached to the complaint.[1] Count I of the complaint seeks injunctive relief preventing defendant from publishing future defamatory statements about plaintiff or his family. Count II is a claim for defamation per se, and Count III is a claim for false-light invasion of privacy.

Defendant sets forth the following facts in his affidavit in support of his motion. Like plaintiff, defendant is originally from Poland, and immigrated to the United States as a child. He lives in Washington, D.C. and is an associate professor at the University College of the University of Maryland. About ten years ago, he founded "Siec," a not-for-profit, "academic/ governmental/

---

[1] Plaintiff does attach one allegedly defamatory article, dated March 20, 2002 (not March 2, 2002), to his response.

- 3 -

community network of people who are interested in Poland and Central Europe." (Affidavit of Michael Szporer, ¶ 5.) Siec published a bulletin at the Library of Congress in Washington, D.C., containing information about topics and events concerning Poland and Central Europe. At the time of its inception, all of Siec's members were from the Washington, D.C. area.

The events calendar for Siec was originally sent to its members via U.S. mail. As the mailing list began to grow, Szporer decided that it would be easier and less expensive to notify members about events by using e-mail. About seven years ago, Szporer decided to send "other useful information," including news and commentaries, about Poland and Central Europe to Siec members in the Washington, D.C. area. This information was sent via e-mail in a newsletter format. Today, Siec has approximately 3,000 members who receive the e-mail newsletter, which is edited by Szporer.

Szporer states that Siec "is a community service with no commercial or business purposes." (Szporer Affidavit, ¶ 5.) Siec is not incorporated, and it does not sell any product or service. It has two sponsors, Western Union and the Karol Marcinkowski University of Medical Sciences in Poznan, Poland. The sponsors pay Siec approximately $1,500.00 per year for its expenses, which · include copyright charges for news report reproduction, maintenance of the Siec member list, maintenance of the computer used to

compile news and send the e-mail newsletter, electricity, and photocopying charges. Siec does not have any employees, nor does it pay Szporer any salary or commission.

Generally, to become a member of Siec and receive the e-mail newsletter, a prospective subscriber must contact Szporer and ask to receive the newsletter. Most, if not all, of Siec's subscribers are referred by word of mouth. All that Szporer requires from the prospective subscriber is his or her e-mail address; Szporer does not ask the subscriber for any other information. Szporer states that he has "no way of knowing what state the member is from," but he estimates that "about fifty people of the three thousand Siec members are residents of Illinois." (Szporer Affidavit, ¶ 15.) After the prospective subscriber gives Szporer his or her e-mail address, the individual is placed on Siec's master e-mail list and begins receiving the newsletter. The e-mail newsletter is provided free of charge to anyone who requests it. Siec does not advertise, and it does not solicit or target any Illinois residents.

Szporer now moves to dismiss the complaint for lack of personal jurisdiction. In the alternative, he moves for a transfer of venue to the District Court for the District of Columbia.

### DISCUSSION

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a <u>prima facie</u> showing that jurisdiction over the defendant is proper. <u>See RAR, Inc. v. Turner</u>

Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997). The court, in deciding such a motion, may receive and consider affidavits from both parties, see Nelson by Carson v. Park Industries, Inc., 717 F.2d 1120, 1123 (7th Cir. 1983), and will resolve all factual conflicts in favor of the plaintiff, see Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1215 (7th Cir. 1984).

A federal district court sitting in diversity in Illinois has jurisdiction over a non-consenting, non-resident defendant if an Illinois state court would have jurisdiction. See McIlwee v. ADM Indus., Inc., 17 F.3d 222, 223 (7th Cir. 1994). "Three distinct obstacles to personal jurisdiction must generally be examined: (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law." RAR, 107 F.3d at 1276. As for state statutory law, the Illinois long-arm statute provides that an Illinois state court also may exercise jurisdiction "on any other basis now or hereafter permitted" by the state and federal constitutions. 735 ILCS 5/2-209(c). Because § 2-209(c) authorizes personal jurisdiction to the constitutional limit, the analysis collapses into two constitutional inquiries--one state and one federal--and we need not consider whether defendants engaged in any of the acts enumerated in the Illinois long-arm statute. See RAR, 107 F.3d at 1276. Typically, the courts look to the federal due process clause to construe the Illinois due process clause. See

McMurray v. ImproveNet, Inc., No. 00 C 7137, 2001 WL 561376, at *1
(N.D. Ill. May 22, 2001) (Grady, J.).

General jurisdiction is for suits neither arising out of nor
related to the defendant's contacts with the forum, and it is
permitted only where the defendant has "continuous and systematic"
contacts with the forum. RAR, 107 F.3d at 1277. Specific
jurisdiction, on the other hand, refers to jurisdiction over a
defendant in a suit arising out of or related to the defendant's
contacts with the forum. See id. Even defendants not physically
present in the jurisdiction have sufficient "minimum contacts" if
they do some act by which they purposefully avail themselves of the
privilege of conducting activities in the forum state, see Hanson
v. Denckla, 357 U.S. 235, 251-53 (1958), and if they "should
reasonably anticipate being haled into court there." World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Plaintiff argues that we may assert both general and specific
jurisdiction over Szporer. However, the complaint does not allege
any facts demonstrating that Szporer had continuous and systematic
contacts with Illinois, or that he did any act such that he could
reasonably anticipate being sued in Illinois. Moreover,
plaintiff's response to defendant's motion relies solely on the
facts set forth by defendant, which in any event are not sufficient
to carry plaintiff's burden. Plaintiff contends that jurisdiction
is proper pursuant to the "effects test" set forth in Calder v.

Jones, 465 U.S. 783 (1984), which instructs that the state in which the victim of defamation lives has jurisdiction over the victim's defamation suit. But the Seventh Circuit has pointed out that, "[i]n Calder as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes Calder itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also 'entered' the state in some fashion, as by the sale of the magazine containing the defamatory material." Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410, 412 (7th Cir. 1994). Thus, plaintiff must show an injury in Illinois plus some additional act directed toward Illinois. Plaintiff has alleged no facts in the complaint and offered no evidence of his own of an additional act by defendant such that defendant would reasonably anticipate being required to defend himself in Illinois. (And the facts alleged by defendant himself do not show such conduct.) Therefore, plaintiff has not met his burden of showing that jurisdiction is proper over Szporer.

Plaintiff is given leave to amend the complaint, if he can, to allege a factual basis for asserting personal jurisdiction over defendant.

## CONCLUSION

For the reasons explained above, defendant Michael Szporer's motion to dismiss this case for lack of personal jurisdiction is granted.  Plaintiff is granted leave to amend the complaint; he may file an amended complaint by November 26, 2002.

DATE:     November 12, 2002


ENTER:    _____
          John F. Grady, United States District Judge